JACKSON LEWIS P.C.
KEVIN D. REESE (SBN 172992)
50 California Street 9th Floor
San Francisco, CA 94111
Telephone: (415) 394-9400
Facsimile: (415) 394-9401
E-mail: Kevin.Reese@jacksonlewis.com

JACKSON LEWIS P.C.
RAJA A. HAFED (SBN 311778)
400 Capitol Mall, Suite 1600
Sacramento, California 95814
Telephone: (916) 341-0404
Facsimile: (916) 341-0141
Email: raja.hafed@jacksonlewis.com

Attorney for Defendant
CG Roxane LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIONNEL RENE YARRIC, individually, and on behalf of other similarly situated employees,<br><br>Plaintiff,<br><br>vs.<br><br>CG ROXANE LLC; and DOES 1 through 25, inclusive,<br><br>Defendants. | CASE NO.:<br><br>[Removed from Marin County Superior Court Case No. CV0006576]<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453 (CAFA)**<br><br>*[Filed concurrently with Declaration of Raja Hafed; Declaration of Rajeep Brown; Notice of Interested Parties; Corporate Disclosure Statement Pursuant to FRCP 7.1]*<br><br>Complaint Filed: June 12, 2025<br>Case Removed: July 18, 2025 |

**TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, PLAINTIFF LIONNEL RENE YARRIC, AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant CG ROXANE LLC ("Defendant") hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332, 1367, 1441, 1446 and 1453, and removes the above-entitled action to this Court from the Superior Court of the State of California in and for the County of Marin based on the Class Action Fairness Act of 2005 ("CAFA"). In support thereof, Defendant asserts the following:

**SERVICE AND PLEADINGS FILED IN STATE COURT**

1. On June 12, 2025, Plaintiff Lionnel Rene Yarric filed an unverified civil Class Action Complaint against Defendant in the Superior Court of the State of California for the County of Marin, entitled *Lionnel Rene Yarric, individually, and on behalf of others similarly situated, v. CG Roxane LLC,* Case No.: CV0006576, which sets forth the following ten causes of action: (1) violation of California Labor Code sections 1194, 1197, and 1197.1 (minimum wages); (2) violation of California Labor Code sections 510 and 1198 (unpaid overtime); (3) violation of California Labor Code sections 551 and 552 (failure to provide one day's rest in seven); (4) violation of California Labor Code section 226.7 and 512 (meal period violations); (5) violation of California Labor Code section 226.7 (rest break violations); (6) violation of California Labor Code sections 204 and 210 (wages not timely paid during employment); (7) violation of California Labor Code section 226(a) (wage statement violations); (8) violation of California Labor Code sections 201, 202, and 203 (untimely final wages); (9) violation of California Labor Code sections 2800 and 2802 (failure to reimburse necessary business expenses); and (10) violation of California Business & Professions Code section 17200, et seq. ("*Yarric*" matter).

2. According to the docket, on June 16, 2025, the Court filed a Notice of Case Assignment**.** Defendant was not served with the Notice of Case Assignment and is unable to obtain a copy on the court's website. Hafed Dec. ¶6.

3. On June 18, 2025, Defendant was served with a copy of the Summons and Complaint, Civil Cover Sheet, Alternative Dispute Resolution (ADR Information Notice, and Notice of Case Management Conference. Hafed Dec. ¶¶3-6, **Exhibits B, C, D, E**.

4. On July 18, 2025, Defendant filed an Answer to the Complaint Defendant in the Superior Court of the State of California for the County of Marin, entitled *Lionnel Rene Yarric,*

*individually, and on behalf of others similarly situated, v. CG Roxane LLC,* Case No.: CV0006576. Hafed Dec. ¶7, **Exhibit F**.

**REMOVAL IS TIMELY**

5. A defendant must ordinarily file a notice of removal either: (1) within 30 days after receiving the initial pleading or service of summons; or (2) if the case is not initially removable, the defendant may file the notice of removal within 30 days after receiving an amended pleading or other paper from which it may first be determined that the case is or has become removable. See 28 U.S.C. § 1446(b)(1) and (b)(3). A defendant may remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines. *Roth v. CHA Hollywood Med. Ctr., L.P.* 720 F.3d 1121, 1125 (9th Cir. 2013). Neither of the removal provisions have been triggered because the Complaint is indeterminate and therefore the 30 days has not been triggered. Removal is based on information Defendant independently learned and knows. Therefore, this Notice of Removal is timely.

**VENUE IS PROPER**

6. This action was filed in the Superior Court in and for the County of Marin. Thus, venue of this action properly lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 84(c)(1) and 1441(a). Venue of this action is also proper pursuant to 28 U.S.C. § 1391, which provides that an action may be venued in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred, and where, based on information and belief, Plaintiffs reside. The Complaint asserts Plaintiff is a California resident.. Further, the Complaint asserts that Defendant maintains offices, employs individuals and transacts business at 10 Pimentel Ct., Novato, CA 94949 in Marin County. **Hafed Dec. ¶3, Exhibit B, Comp. ¶6**.

**REMOVAL IS PROPER BASED ON CLASS ACTION FAIRNESS ACT**

7. Removal of this action is proper under CAFA, 28 U.S.C. §§ 1332 *et seq.* Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in

which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

8. CAFA holds that a district court shall not apply section (d)(2) above to any class action where the primary defendants are States, State officials, or other governmental entities or where the proposed class involves less than 100 members. 28 U.S.C. § 1332(d)(5).

9. As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action and – based on the allegations in the Complaint – the matter in controversy plausibly exceeds the sum of $5,000,000, exclusive of interest, Plaintiff is a citizen of a foreign country and Defendant is a citizen of the United States. *See* 28 U.S.C. §§ 1332(d)(2) and 1453. Further, the number of putative class members is more than 100 and Defendant is not a State, State official, or other governmental entity.

**A. Plaintiff's Complaint Was Pleaded as a Class Action**

10. Plaintiff has filed this action as a "class action." Plaintiff's caption page states: "CLASS-ACTION COMPLAINT." (Comp., pg. 1.) And the Complaint alleges "Plaintiff, individually and on behalf of other similarly situated employees allege as follows….: 1. This is a class action to recover damages on behalf of Plaintiff and all current and former hourly-paid and/or non-exempt employees who worked for Defendants in the State of California at any time during the period from four years prior to the date of the filing of this Complaint through final judgment ('Class Members')." **Hafed Dec. ¶3, Exhibit B**, Comp., pg. 3:1-8.

**B. Minimal Diversity is Satisfied Under CAFA**

11. CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which none of the defendants are citizens, or any member of a plaintiff class is a foreign country or is a citizen of a foreign country and any defendant is a citizen of the United States. 28 U.S.C. § 1332(d)(2); *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant."); *United Steel, Paper & Forestry, Rubber, Mfg., Energy,*

*Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal").

12. Citizenship of the parties is determined by their citizenship status at the action's commencement. *Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

13. For individuals, citizenship is determined by a person's domicile. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."). While residence and citizenship are not the same, a person's place of residence is prima facie evidence of his or her citizenship. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"; see also *Smith v. Simmons*, No. 1:05-CV-01187-OWW-GSA, 2008 U.S. Dist. LEXIS 21162, at *22 (E.D. Cal. 2008).) Furthermore, a person's intention to remain may be established by his or her place of employment. *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); see also *Francisco v. Emeritus Corp.*, No. CV 17-02871-BRO (SSx)), 2017 U.S. Dist. LEXIS 90131, at *10 (C.D. Cal. June 12, 2017) ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California.").

14. Plaintiff, at the time this action was commenced was, and still is a resident and citizen of the country France. See Declaration of Rajeep Brown ("Brown Dec.") ¶7. Further, additional putative class members at the time of the filing of the Complaint, resided in another state other than California. Brown Dec. ¶8.

15. For purposes of removal under CAFA, the citizenship of a limited liability company is analyzed as an "unincorporated association" under Section 1332(d)(10). *Ferrell v. Express Check Advance of Georgia*, 591 F.3d 698, 704 (4th Cir. 2010); *Ramirez v. Carefusion Res., LLC,* No. 18-2852,

2019 U.S. Dist. LEXIS 112995, at *5 (S.D. Cal. July 1, 2019).) CAFA expressly states that "for purposes of this section .... an unincorporated association or corporation is deemed to be a citizen of the state where it has its principal place of business and under whose laws it is incorporated or organized." 28 U.S.C. § 1332(d)(10). This is different from Section 1332(c) which has been interpreted to provide that "[a]n LLC is a citizen of every state in which is owners/members are citizens." *Johnson v. Columbia Properties Anchorage,* 437 F.3d 894, 899 (9th Cir. 2006).

16. With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend,* 559 U.S. 77, 80-81 (2010). Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities. *Id.* A corporation can only have one "nerve center." *Id.* at 93-94. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weight corporate functions, assets, or revenues in each state. *Id.*

17. At the time Plaintiff filed the Complaint and presently, Defendant has been a limited liability company organized under the laws of the State of California. Brown Dec. ¶5. Accordingly, for purposes of removal under CAFA, Defendant is a citizen of the State of California.

18. Given the above, minimal diversity exists under CAFA because at least one member of the putative class (Plaintiff) was, at the time this action was commenced – and is still believed to be – a citizen of France, while Defendant was – and still is – a citizen of the State of California. 28 U.S.C. § 1332(d)(2).

### C. <u>The Amount In Controversy Exceeds $5,000,000 Based On A Plausible Reading Of The Allegations Of The Complaint</u>

19. In measuring the amount in controversy, the court must assume that the allegations in the complaint are true and that a jury will return a verdict in favor of plaintiff on all claims asserted in the complaint. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is the amount put "in controversy" by plaintiff's

complaint and not how much, if anything, defendants will actually owe. *Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 986 (S.D. Cal. 2005) (citing *Scherer v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 399 (2d Cir. 2003) [recognizing that the ultimate or provable amount of damages is not what is considered in the removal analysis; rather, it is the amount put in controversy by the plaintiff's complaint]).

20. A notice of removal filed in federal court need only contain "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). A removing defendant's notice of removal "need not contain evidentiary submissions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Rather, a removing defendant may rely on reasonable assumptions to prove up the amount in controversy, even when challenged by an opposing party. See *id*. at 1199.

21. The Ninth Circuit expounded on these principles in *Perez v. Rose Hills Co*., 131 F.4th 804 (9th Cir. 2025). The court expressly approved a defendant's reliance on the allegations in the complaint to assume the average rate of purported violations for the purpose of calculating the amount in controversy. 131 F.4th at 809. ("The approach employed by Rose Hills here tracks the approach we approved in *Arias*."). The district court must determine if the violation rate assumed by the defendant "was a reasonable interpretation of the complaint." *Id*. A violation rate that is based on a reasonable interpretation of the complaint's allegations need not be supported by other evidence, whereas a violation rate that is not based on a reasonable interpretation of the complaint's allegations needs other evidentiary support. *Id*. at 808-809 (discussing *Ibarra,* 775 F.3d at 1196-1199). The Ninth Circuit also clarified that a defendant's assumed violation rate is not unreasonable if it is merely one of multiple equally valid assumptions. *Id*. at 809 ("[A]n assumption is not unreasonable simply because another equally valid assumption may exist."). The Ninth Circuit expressly stated that principle applies to Plaintiff's "at times" language, which the Ninth Circuit also stated "could support the violation rate that Rose Hills assumed." *Id*. at 810; *see also id*. ("[Plaintiff] was also free to use some more specific phrase than 'at times' when drafting the complaint; had she done so, she could have constrained the range of assumptions that Rose Hills could reasonably adopt."). The Ninth Circuit further stated that, if an allegation could equally

support a removing defendant's assumed violation rate and others, it was incumbent on the plaintiff to come forward with evidence of a "more reasonable" assumed violation rate, and then the district court could weigh that evidence versus the defendant's assumption based on the complaint. *See id.* at 810 (citing *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 996 (9th Cir. 2022).

22. "The amount in controversy includes the amount of damages in dispute, as well as attorney's fees . . ." and the Court may consider responses to discovery and damages awards in similar cases in determining amount in controversary. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *see* 28 U.S.C. § 1446(b)(3) and (c)(3)(A).

23. Without admitting that Plaintiff could recover or is entitled to any damages individually, let alone on a class wide basis, Defendant has a good-faith belief that Plaintiff's sought-after relief places the amount in controversy in this action in excess of $5,000,000, exclusive of interest and costs.

***Failure to Provide Meal Periods (Fourth Cause of Action)*** [1]

24. According to Labor Code Section 226.7, no employer shall require any employee to work during any meal or rest period. Cal. Lab. Code § 226.7(a). If an employer fails to provide an employee with a meal or rest period, the employer shall pay the employee an additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest period is not provided. Cal. Lab. Code § 226.7(b).

25. The Complaint alleges meal period violations under Labor Code sections 512 and 226.7 as follows: "Plaintiff and the other Class Members who were scheduled to work for shifts no longer than six (6) hours, and who did not waive their legally mandated meal periods by mutual consent, were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than (30) minutes." (Complaint, ¶ 61.) Further, the Complaint alleges Plaintiff and the other Class Members who were scheduled to work for shifts in excess or ten (10) hours but no longer than twelve (12) hours, and who did not waive their legally mandated meal periods by mutual consent, were required to work for periods longer than ten (10) hours without a second

[1] Because of the large number of pay periods, the requisite amount in controversy can be established using only some of Plaintiff's claims.

uninterrupted meal period of not less than thirty (30) minutes. (Complaint, ¶ 62.) The Complaint further alleges:

> Defendants intentionally and willfully required Plaintiff and the other Class Members to work during meal periods and failed to compensate Plaintiff and the other Class Members for work performed during meal periods. This includes, among other things, requiring Plaintiff and Class Members to take late lunch breaks, permitting and/or requiring Plaintiff and Class Members to take short lunch breaks, interrupting and/or allowing others to interrupt plaintiff and Class Members during their lunch breaks, failing to relieve Plaintiff and Class Members of all duties during their lunch breaks and restricting Plaintiff and Class Members from leaving the premises during their lunch breaks." (Complaint, ¶ 63.)

26. The Complaint further alleges "because of Defendants' rounding policy, meal breaks were at times incorrectly recorded as compliant, when in reality they were untimely and/or cut short." (Complaint, ¶ 64.) The Complaint also alleges that "Defendants failed to pay Plaintiff and the other Class Members all meal period premiums due pursuant to California Labor Code section 226.7 and 512 and the applicable IWC Wage Order." (Complaint, ¶ 65.)

27. The Putative Class Period (referred to in the Complaint as the "relevant time period") is from four years prior from the filing of the Complaint (June 12, 2025) to present for all wage claims – in other words from June 12, 2021 to present, or when a class is certified.[2]

28. Claims for meal and rest period premium wages are wage claims. *Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93. Plaintiff's meal claims have a four-year statute of limitations.

29. From June 12, 2021 through July 17, 2025[3]386 non-exempt production employees worked for Defendant. Brown Decl., ¶ 6.

30. Those 386 non-exempt production employees that worked for Defendant worked in excess of 42,970 combined workweeks from June 12, 2021 through July 17, 2025. Brown Decl., ¶6.

---

[2] Plaintiff asserts a claim under Business & Professions Code sections 17200 et seq., which extends the statute of limitations on wage claims to four years. *See Cortez v. Purolator Air Filtration Products Co*., 23 Cal. 4th 163 (2000).

[3] The end data of the data and calculations is on July 17, 2025 when Defendant pulled relevant data related to non-exempt workers of Defendant including the number of Putative Class Members, the estimate number of workweeks they collectively worked, and the beginning and ending dates of their employment (if any). Brown Decl., ¶6, ftn. 1.

31. The average hourly rate for the 386 non-exempt production employees is $20.79 per hour. Brown Decl., ¶6.

32. Thus, while Defendant completely denies Plaintiff is entitled to recover any meal period premiums, based on these and other allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one meal period premium per week (for all putative class members), which would place over $893,346.30 in controversy in connection with their meal period claim ($20.79 average hourly wage rate x 1.0 meal period premium per workweek x 42,970 workweeks).

***Failure to Provide Rest Breaks (Fifth Cause of Action)***

33. Plaintiff's Complaint alleges rest break violations under Labor Code section 226.7. The Complaint alleges that, "Defendants routinely required Plaintiff and the other Class Members to work three and one-half (3 '/2) or more hours without authorizing or permitting a compliant ten (1 0) minute rest period per each four (4) hour period, or major fraction thereof, worked. Moreover, Defendants willfully required, suffered, and permitted Plaintiff and the other Class Members to work during what should have been their rest periods. Defendants also failed to relieve Plaintiff and the other Class Members of all duties for ten (10) minutes as required for compliant rest breaks." (Comp. at ¶¶ 72-73.) The Complaint alleges that Plaintiff and putative class members are entitled to recover from Defendants one additional hour of pay at their regular hourly rate of compensation for each workday that compliant rest periods were not provided. (Comp. at ¶75.)

34. From June 12, 2021 through July 17, 2025 386 non-exempt production employees worked for Defendant. Brown Decl., ¶6.

35. Those 386 non-exempt production employees that worked for Defendant worked in excess of a combined 42,970 workweeks from June 12, 2021 through July 17, 2025. Brown Decl., ¶6.

36. The average hourly rate for the putative class members is 386 non-exempt production employees is $20.79. Brown Decl., ¶6.

37. Thus, while Defendant completely denies Plaintiff is entitled to recover any rest break premiums, based on these and other allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one rest break premium per week (for all putative class members), which would place

over $893,346.30 in controversy in connection with their rest break claim ($20.79 average hourly wage rate x 1.0 rest break premium per workweek x 42,970 workweeks).

***Failure to Pay Overtime (Second Cause of Action)***

38. Cal. Lab. Code § 510 provides that employees in California shall not be employed more than eight (8) hours per workday and more than forty (40) hours per workweek unless they receive additional compensation beyond their regular wages in amounts specified by law.

39. Plaintiff's Complaint alleges unpaid overtime wages pursuant to Labor Code section 510 and 1198. The Complaint alleges;

> Plaintiff and the other Class Members regularly worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, in excess of forty (40) hours in a week, and/or in excess of seven (7) consecutive days in a workweek. However, Defendants did not accurately record Plaintiff and the other Class Members' actual hours worked and intentionally and willfully failed to pay all overtime wages owed to Plaintiff and the other Class Members. Defendants' failure to pay correct overtime wages included, inter alia: (a) when the combined total of the off-the-clock work discussed supra and the on-the-clock work exceed the number of hours that trigger the payment of overtime wages under California Labor Code sections 510 and 1198 and/or the applicable IWC Wage Order; (b) when Defendants intentionally, willfully, and/or negligently mischaracterized overtime as straight time; (c) when Defendants assigned more work than could reasonably be completed in a workday or workweek to Plaintiff and Class Members, but refused to authorize the overtime necessary for them to complete the assigned work; and (d) when Defendants failed to include all required wages and renumeration when calculating setting the overtime rate. (Complaint at ¶45.)

40. From June 12, 2021 through July 17, 2025386 non-exempt production employees worked for Defendant. Brown Decl., ¶6.

41. Those 386 non-exempt production employees that worked for Defendant worked in excess of a combined 42,970 workweeks from June 12, 2021 through July 17, 2025. Brown Decl., ¶6.

42. The average overtime hourly rate for the 386 non-exempt production employees is $31.19 per hour ($20.79 x 1.5).

43. Thus, while Defendant completely denies Plaintiff is entitled to recover any overtime wages, based on these and other allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one hour of overtime per week (for all putative class members), which would place over $1,340,019.45 in controversy in connection with their unpaid overtime claims ($20.79 base hourly rate

x 1.5 overtime multiplier x 42,970 workweeks).

***Failure to Provide Timely Wages During Employment (Sixth Cause of Action)***

44. Under Labor Code section 204, "All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays. Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month." Cal. Lab. Code §204(a).

45. Plaintiff's Complaint alleges as "a result of the violations set forth in detail above (failure to pay overtime, failure to pay minimum wages, meal break violations, and rest break violations), Defendants intentionally and willfully failed to timely pay Plaintiff and the other Class Members all wages due to them within the period permissible under California Labor Code section 204."

46. From June 12, 2024 to July 17, 2025, there were 255 non-exempt production employees that had 5,900 pay periods. Brown Decl., ¶ 6. Because the Complaint alleges willful and intentional violations, the $200 penalty for willful and intentional violations applies. Assuming one violation per putative class member per pay period, the total Section 204 penalties owed is $1,180,000 (5,900 x $200).

***Failure to Provide Accurate Wage Statements (Seventh Cause of Action)***

47. Under Labor Code Section 226, Plaintiff and putative class members seek penalties for Defendant's "intentional" and "willful" failure to provide itemized accurate wage statements. Cal. Lab. Code §226(a), (e); (Comp. at ¶86.)

48. From June 12, 2024 to July 17, 2025, 255 non-exempt production employees had 5,900 pay periods. Brown Decl., ¶6. Assuming 255 "first" or $50 violations and 5,645"subsequent" or $100 violations, the total Section 226 penalties owed is $577,250 ((255x $50)+(5,645 $100)).

***Failure to Pay All Wages Due Upon Termination and Waiting Time Penalties (Eighth Cause of Action)***

49. The Complaint alleges a derivative claim for waiting time penalties under Labor Code section 203 as follows: "As a result of the violations set forth in detail above (failure to pay overtime, failure to pay minimum wages, meal break violations, and rest break violations), at the time that Plaintiff and the other Class Members' employment with Defendants ended, Defendants knowingly and willfully failed to pay them all wages owed to them pursuant to California Labor Code sections 201 and 202, including, without limitation, overtime wages, minimum wages, meal period premium wages, and rest period premium wages, and all wages due to Plaintiff and Class Members as they became due, as required per California Labor Code section 204."(Complaint at ¶ 93.)

50. Assuming all former non-exempt production employees during the statute of limitations are due wages is reasonable for purposes of establishing the amount in controversy under a claim for failure to pay wages on termination under Labor Code Section 203. This is especially true when the claim is pleaded in a derivative manner because any amount of unpaid wages (whether unpaid overtime or unprovided meal or rest periods) would trigger waiting time penalties. *Ramos v. Schenker, Inc*., No. 5:18-cv-01551-JLS-KK, 2018 U.S.Dist.LEXIS 187557, at *7 (C.D. Cal. Nov. 1, 2018) (denying plaintiff's motion to remand and holding: "Whereas assumptions about the regularity and extent of the underlying overtime violations may be fairly contested at this stage, the very nature of a class action complaint for unpaid overtime wages requires Plaintiff to allege that putative class members have not received all wages owed in violation of the law. Therefore, Plaintiff's allegations of unpaid wages are implicit allegations of maximum damages for waiting time penalties. This reasoning is shared by other courts in this circuit."); see, e.g., *Mendoza*, 2022 U.S. Dist. LEXIS 167940, at *17-18 (finding the defendant's assumption of a 100% violation rate to be reasonable "because Defendant…need only have caused and failed to remedy a single violation per employee for waiting time penalties to apply") (citation and internal quotation marks omitted).); *Marentes v. Key Energy Servs. Cal*. (E.D. Cal. Feb. 23, 2015, No. 1:13-cv-02067 AWI JLT) 2015 U.S.Dist.LEXIS 21377, at *23 ("Because these wages are alleged to have not been paid, the full thirty-days may be used for each of the putative class members."); *Roth v. Comerica Bank* (C.D. Cal. 2010) 799 F.Supp.2d 1107, 1125-1126 ("The court

agrees that Roth's allegations suggest all class members were denied some form of proper compensation during their employment, and that the underpayment was not corrected at end of their employment. Thus, defendants can properly assume that all employees were entitled to maximum waiting time penalties under Labor Code § 203."); *Avila v. Northwood Hosp. LLC* (C.D. Cal. Feb. 5, 2024, No. 2:23-cv-09598-SB-AS) 2024 U.S.Dist.LEXIS 19850, at *11 (denying plaintiff's motion to remand and holding: "Defendant identifies 84 employees who have separated from their employment with Defendant since September 18, 2020. As in *Jauregui,* it is reasonable to assume that all 386 of these non-exempt production employees are entitled to the full 30-day penalty.").

51. Moreover, assuming a full 30 days of waiting time penalties is also reasonable since Defendant disputes the underlying wage claims and would not have paid for alleged unpaid overtime hours or alleged meal period premiums Plaintiff contends are due. See, e.g., *Jauregui v. Roadrunner Transp. Servs.* (9th Cir. 2022) 28 F.4th 989, 993-994 (holding the district court erred in rejecting the defendant's assumption that all former employees were entitled to the full 30 days of waiting time penalties: "The district court did not afford Roadrunner this latitude when analyzing the amount in controversy. As one example, the court rejected Roadrunner's assumption that each terminated employee would have been entitled to the maximum 30-day waiting time penalty because Roadrunner 'provides no evidence' supporting that fact. But it was not unreasonable for Roadrunner to assume that the vast majority (if not all) of the alleged violations over the four years at issue in this case would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty. The fact that a very small percentage of employees might possibly not be entitled to the maximum penalty is not an appropriate reason to dismiss altogether Defendant's estimate for this claim.").

52. Labor Code section 203 has a three-year statute of limitations[4] from the date of the filing of Plaintiff's Complaint. Between June 12, 2022 through July 17, 2025, 128 California non-exempt production employees have been terminated, resigned, or have otherwise separated from their employment with Defendant for at least thirty days, potentially qualifying them for the full

[4] A three-year statute of limitations applies to claims for waiting time penalties under Labor Code section 203. See *Pineda v. Bank of America* (2010) 50 Cal.4th 1389.

thirty days of waiting time penalties as alleged in Plaintiff's Complaint. Brown Decl., ¶6. Thus, while Defendant completely denies Plaintiff is entitled to recover any waiting time penalties, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over $638,668.80 in controversy in connection with his claim for waiting time penalties ($20.79 average hourly rate x 8 hours/day x 30 days x 128 Putative Class Members who have been terminated for at least thirty days).

***Other Claims and Attorney's Fees***

53. In addition to these claims, Plaintiff seeks damages on behalf of himself and the putative class for minimum wages, failure to provide one days rest in seven, and failure to reimburse necessary business expenses. *See, e.g.,* Hafed Dec. ¶3, **Exhibit B**, Comp. ¶¶33-39, 48-55, 95-98. These potential damages and/or penalties significantly increase the amount in controversy.

54. Additionally, Plaintiff's Complaint seeks an unspecified amount of attorneys' fees and interest in connection with their claims. *See, e.g.,* Hafed Dec. ¶3, **Exhibit B**, Comp. ¶¶38, 39, 47, 55, 67, 77, 94. Such fees may be considered to determine jurisdictional amount, *see Goldberg v. CPC Int'l, Inc.* 678 F.2d 1365, 1367 (9th Cir. 1982), cert. denied, 459 U.S. 945 (1982), including those fees that are recoverable by statute, *Galt G/S v. JSS Scandinavia* 142 F.3d 1150, 1155-56 (9th Cir. 1998). Indeed, the Ninth Circuit recently concluded that "the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Lucas v. Michael Kors (USA) Inc.*, 2018 U.S. Dist. LEXIS 78510, at *32 (C.D. Cal. May 9, 2018) ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy.").

55. "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275, at *23 (N.D.

Cal. Jan. 2, 2014); *see also Hamilton v. Wal-Mart Stores, Inc.*, No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims."); *Herrera v. Carmax Auto Superstores Cal., LLC*, 2014 U.S. Dist. LEXIS 188729, at *12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available.").

56. Defendant denies the validity and merit of all of Plaintiff's claims, the legal theories upon which they are purportedly based, and the claims for monetary and other relief that flow from them. However, for purposes of removal only, and without conceding that Plaintiff is entitled to any damages or penalties, assuming for the sake of argument the truth of Plaintiff's allegations, it is readily apparent that Plaintiff's claims establish an amount in controversy exceeding the jurisdictional minimum of $5,000,000, exclusive of interest and costs, as required by 28 U.S.C. § 1332 based on the allegations in the Complaint.

***Total Plausible Amount in Controversy***

57. Thus, for the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiff's claims, but rather expressly denying all allegations set forth in the Complaint, it is plausible that the aggregate amount in controversy in connection with Plaintiff's putative class claims (over **<u>$6,767,943.60</u>** for the relevant time period) surpasses the $5,000,000 jurisdictional threshold required under CAFA:

| | |
|---|---|
| Unpaid Overtime ( Second Cause of Action) | $1,340,019.45 |
| Failure to Provide Meal Periods (Fourth Cause of Action) | $893,346.30 |
| Failure to Provide Rest Breaks (Fifth Cause of Action) | $893,346.30 |

| | |
|---|---|
| Wages not Timely Paid During Employment (Sixth Cause of Action) | $1,180,000.00 |
| Inaccurate Wage Statements (Seventh Cause of Action) | $577,250.00 |
| Untimely Final Wages and Waiting Time Penalties (Eighth Cause of Action) | $$638,668.80 |
| **SUBTOTAL:** | **$5,522,630.85** |
| Attorney's Fees | $1,245,312.75 |
| **TOTAL** | **$6,767,943.60** |

**D. CAFA's Numerosity Requirement Is Satisfied**

58. CAFA also requires that "the number of members of all proposed plaintiff classes in the aggregate" exceeds 100, a standard satisfied by the Complaint here. *See* 28 U.S.C. § 1332(d)(5).

59. Here, the class is estimated to be over one hundred (100). Based upon Defendant's records, the putative class includes approximately 386 non-exempt production employees in California between June 12, 2021 to the present. Brown Dec. ¶6. As such, this Court properly has jurisdiction over this matter, as the class proposed by Plaintiff contains in excess of 100 members.

**NOTICE TO ALL PARTIES AND STATE COURT**

60. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiff's counsel and filed with the Clerk of the Marin County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

/ / /

/ / /

/ / /

**CONCLUSION**

61. Based on the foregoing, Defendant hereby removes the above-captioned action from the Marin County Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453) and respectfully requests that this Court retain jurisdiction for all further proceedings.

Dated: July 18, 2025

JACKSON LEWIS P.C.

By: /s/ *Raja A. Hafed*
KEVIN D. REESE
RAJA A. HAFED

Attorneys for Defendant
CG ROXANE LLC